Martin, J.
The action below was upon a policy of life insurance issued by the defendant to the plaintiff on the *219 life of her husband. The policy contained a proviso that it should be null and void if the insured “shall under any circumstances die by his own hand.” The petition was in the usual form. The answer denied t.he death of the insured, and averred that if he was dead, he died of his own hand. Reply was a general denial. Trial to a jury, resulting in verdict and judgment for defendant. District court on error gave judgment of affirmance. On the trial, amongst other things the death was proved, and plaintiff rested. Defendant introduced testimony tending to show that the insured had family troubles, was tired of life and contemplated, prepared for and committed suicide by taking poison.
In.rebuttal the plaintiff interrogated a witness as to the mental condition of the insured shortly before his death, with a view to show his insanity at the time of committing the act of suicide. Objection was made, but not to the form of the question. The court refused to allow the question to be answered, ruling the proposed testimony inadmissible. Exception was taken and the ruling was also assigned as a ground for a new trial, which was refused. It is also one of the assignments of- error here; and the only one we consider it important to notice. Was testis mony tending to show the insanity of the insured at the time of his death material to the issue? The majority of this court think it was material, and that the court below erred in excluding it. We have arrived at this conclusion from a construction of the proviso, and hold that insanity of the suicide might affect its operation. The policy is a contract between the parties to this suit. Its object was to provide indemnity against the premature death of the insured. The plaintiff, before she brought her action, had duly performed all the conditions .of the contract to be kept by her. Her claim upon the company could to no extent be impaired by any act or crime of the insured committed after the execution of the contract, unless it was so stipulated therein. Such stipulations are against the general intendment of the contract, and'can operate only by way of forfeiture. And *220 therefore, whilst it is entirely competent for the parties to provide such conditions of forfeiture, yet to be valid they must be reasonably precise and particular, and not against public policy. The. condition of forfeiture in this policy is that if the insured “shall under any circumstances die by his own hand.”
The learned counsel for the company in their argument advance two positions:
The first is that the expression “ die by his own hand ” without any qualifying terms, means intentional self-destruction whether the party1' is sane or insane.
The second is that, if the expression is restricted to mean criminal, suicide, then the effect of adding the qualifying phrase “under any circumstances,” is to enlarge the meaning so as to include every case of intentional suicide, whether criminal or not, or committed by a person sane or insane. If his first position be tenable no effect whatever can be given to the qualifying phrase, unless it be to extend the proviso to every case of unintentional self-destruction. Strictly'- taken, the proviso is susceptible of a reading that makes the qualifying words meaningless. But such a construction is presumably not within the contemplation of the parties, and is never admissible unless required by the context or the nature of the subject. Nor is the other reading admissible which would work a forfeiture in cases of accidental death, occasioned by the direct act of the party — a condition which if plainly stated in the policy, would, to say the least, be of very questionable validity. The phrase occurs in the printed part of the policy, and was inserted by the company, no doubt, for a lawful and commendable purpose.
The perplexing state of uncertainty'- and conflict in the judicial holdings in tliis country as to the meaning of the condition in the common form, and the difficulty of making proof to j¡he satisfaction of juries in cases of shameless frauds by suicides, present strong inducements to companies to seek protection in definite stipulations.
The object of'this company in inserting the phrase under *221 consideration, was doubtless to secure such protection; and it was probably supposed that its effect would be merely to extend the proviso to cases of intentional self-destruction, whether the party was sane or insane. But whatever the purpose may have been, to have effect it must be expressed in suitable language and be lawful. The question is, did both parties so understand the phrase, or rather is the language such that they must be held to have so understood it. And in determining this question we are entitled to the aid of, and are probably bound on principle to apply, the rule of strict construction as against the company. In National Bank v. Insurance Company, 95 U. S., 673, this rule is indicated in the third proposition of the syllabus as follows: “The policy having been prepared by the company, should be construed most strongly against them.” Here the stipulation was not only prepared by the company, but is one of forfeiture.
However, it is sufficient to say that there is nothing in the phrase that carries an idea of any precise qualification, such as is now claimed by the defendant, or such as would be acceptable to either partjr or the court. Language more nearly expressive of the object could have been employed. Well-considered analogous cases lend support to the view we have expressed. In Bigelow v. Ins. Company, 93 U. S., 284, the question was as to the construction and validity of a proviso to the effect that it should be void if the insured died by suicide, sane or insane.
Justice Davis in pronouncing the opinion, says, “Nothing can be clearer than that the words sane or insane were intro-, duced for the purpose of excepting from the operation of the policy any intended self-destruction, whether the insured was of sound mind or in a state of insanity. These words have a precise, definite and well-understood meaning. No one could be misled by them; nor could an expansion of this language more clearly express the intention of the parties.”
In Pierce v. Insurance Company, 34 Wis., 389, the same question arose on a similar proviso. The words were, “ die *222 by suicide, felonious or otherwise, sane or insane.” The qualification was upheld, and in the very able opinion of the court great stress is laid on the fact that the qualification was restricted and particular, and that it was so precise and guarded as to clearly and expressly exclude a limitation to self-murder.
In Jacobs v. Life Ins. Company, 5 Big. Life, &c., Rep. 42, the condition was that the policy should be void if the insured shall “ die by his own hand or act, voluntary or otherwise.” It was held that the words “ or otherwise ” were of uncertain meaning and void. In the opinion of the court it is said, “ If the act is by his own hand, it is only necessary that it should be voluntary or otherwise in order to avoid the insurance. There is nothing in the ordinary or popular acceptation of the term which would limit its sense only to mean insanity. It is admitted that such was not the understanding o£ the company and that this'construction would defeat the intention of both parties; and probably no court in America would undertake to enforce a provision so dangerous and uncertain.”
A majority of the court are of opinion that the phrase “under any circumstances” must be disregarded as too general and uncertain to serve any purpose in the construction of. the proviso under consideration.
We must consider the condition of forfeiture as if it were simply “ if he die by his own hand.”
Do these words, as assumed, mean criminal self-destruction? The terms “die bj1- his own hands,” “suicide,” “self-.murder,” and the like, are -synonymous. In England they involve the element of criminality, and. the principle that an insane man is not responsible for the act is applied in all cases, except only in the construction given to such act when committed by the insured under a policy containing a condition of forfeiture therefor. The exception is as well established as the rule, and goes to the extent of holding- that the act is within the proviso if the insured had mind enough to intend the act and knew it would kill him, although he was unable to appreciate that it was Avrong or *223 had not the power to resist an impulse to commit it. In other words, it. excludes any consideration of sanity.
" In this country the conflict between the authorities is utterly irreconcilable. The decided preponderance, however, favors the general rule and rejects the English doctrine.
It is unnecessary to refer to the authorities in detail. The state of the discussion is well known to the bar; and the argument was long since exhausted. A majority of the court reject the English doctrine, and adopt the view generally prevailing in this country, which is consistent with legal analogies. We adopt, as the law of this case, the rules laid down by the supreme court of the United States in Life Ins. Company v. Terry, 15 Wall., 584, as follows :
“ If the assured, being in possession of his ordinary reasoning faculties, from anger, pride, jealousy or a desire to escape from the ills of life, intentionally takes his own life, the proviso atttaehes and there can be no recovery.
“ If the death is caused by the voluntary act of the assured, he knowing and intending that his death shall be the result of his act, but when his reasoning faculties are so far impaired that he is not able to understand the moral character, the general nature, consequences and effect of the act he is about to commit, or when he is impelled thereto by an insane impulse, which he has not the power to resist, such death is not within the contemplation of the parties to the contract, and the insurer is liable.”
The condition of forfeiture in that case was, “if the assured shall die by his own hand: ” — the same as we have found the condition in this case to be.
The onus of showing the requisite capacity of the insured as well as the act of self-destruction, to bring the case within the proviso, rests upon the company — the party who sets it up as a defense. Knickerbocker Ins. Co. v. Peters, 42 Md., 414; Insurance Company v. Gridley, 100 U. S., 614; Phillips v. Ins. Company, 26 La. Ann. Rep.
In maintaining this issue the defendant will have tire benefit of the presumption of sanity which obtains in a *224 case of suicide, as in that of any other enormous crime, until it is overcome by competent testimony.
It follows from what has been said, that the testimony proposed in rebuttal was competent, and its exclusion by the trial court was error.

Judgment reversed and cause remanded.